May it please the court. My name is T.W. Brown, and I'm a certified law student representing the appellant, Barry Patterson. I'll keep my eye on the clock, and I plan to reserve four minutes for rebuttal by my co-counsel, Chris Motts, also a certified law student. The district court made a number of procedural errors below, and today I'd like to focus on three. First, the district court erred in dismissing Mr. Patterson's medical indifference claim because he meets the low threshold for proceeding past the screening stage. Second, Mr. Patterson adequately exhausted a claim for religious discrimination because his grievances object intelligibly to the problem of discriminatory ticketing. And third, disputed issues of material fact preclude summary judgment on Mr. Patterson. Discriminatory what? Pardon me? The problem of discriminatory what? Discriminatory ticketing, I'm sorry. Ticketing? Disciplinary tickets, yes, Your Honor. Oh, I'm sorry. I was focusing on the wrong claim. Go ahead. And third, disputed issues of material fact preclude summary judgment on Mr. Patterson's pre-exercise claims. Turning to the first reason why this Court should reverse, the district court erred in dismissing Mr. Patterson's medical indifference claim at screening. What was the formal grievance? Pardon me, Your Honor, with regard to Mr. Patterson? What was the formal grievance as it relates to Young? With the Young, Mr. Patterson grieved the issue that occurred on the track where Mr. Young told him that he was. He grieved the confiscation of his clothes and asked for their return, correct? Yes, Your Honor. And then he described the claim in an inmate letter, right? Yes, Your Honor. If at all, the first stage of the prison's administrative grievance process. Did he ever mention it in any further appeals? No, Your Honor. He mentioned it. So isn't that the end of the case then for exhaustion? With regard to his health claim against Young, no, Your Honor, because in his informal grievance. Well, but just a minute as his health claim. He did never grieve the health claim. His formal grievance was confiscation of the clothes. He described that in the inmate letter. Then it isn't mentioned anymore. In his informal grievance, he did mention that running in his sweatpants might aggravate various health problems, including nausea, dizziness, and epilepsy. This was sufficient to put the prison on notice. Now, with regard to his. . . Yes, Your Honor. The prison's got to have some knowledge about what he's doing, and he's got to take it all the way through the process. I was just trying to look through what he said all through the process to see if he really exhausted. Yes, Your Honor. The fact is that he did mention the health claims in his informal grievance, and then in his formal grievances he was responding to the issues that were presented by the prison's responses to his grievance. However, this Court has never distinguished between bringing notice in an informal grievance or a formal grievance, and under Griffin v. Arpaio, in order to exhaust the issue, he must object intelligibly to it such that the prison is on notice of the problem. You call it an informal grievance. That was the letter he sent, right? With regard to the youngest. . . You call it an informal grievance, but why was it a grievance at all? Your Honor, in the Arizona Department of Corrections, there's a four-step grievance process that begins with an informal grievance letter to the correctional officer assigned to that individual. And if the inmate is upset or finds this response unsatisfactory, he then begins the next process where he reads it to the warden, then the grievance coordinator, and finally to the director. Now, how much of that was done in this case? With regard to Officer Young, he finished it. He appealed it all the way to the director. With regard to his various other claims, he finished his grievance process against Moore. . . When you say Officer Young, that's not a grievance. That's a person. Officer Young is a person, and he grieved the incident regarding the sweatpants and the track, Your Honor. And he complained about his health? Yes, Your Honor. In the informal grievance, he notes that if he's required to leave his sweatpants on while he works out in the summer in Arizona, it may aggravate his nausea and dizziness. Well, you said he took it all the way. Did he take that all the way? Yes, Your Honor. He appealed that through the three-step process to the director. And he raised health issues? No, Your Honor. The health issue is only in his informal grievance. Okay. So let me ask the question again. This time, answer the question. Where does he take the – I think it was actually Judge O'Scanlon's question. What did he take through the full grievance process? After the informal grievance, he mentions the property loss claim. So why isn't that it? Why is that the only thing that he exhausted? Your Honor, this Court has never differentiated between the issue of informal grievance or formal grievance. The issue is just notice. And by mentioning those health problems in his informal grievance, he puts the prison on notice of that problem. But he hasn't completed the process. He has to complete his grievance. He hasn't completed the grievance. He hasn't. He has completed the grievance, Your Honor. That's our woodpecker. He did complete the grievance with regard to that issue. But he didn't raise the health issues. He raised it in his informal grievance, and that was enough to put the prison on notice of the problem. Well, you say that, but it's not true. I mean, the reason you have a multi-step process is so that you let them know you're really upset about this, and I want you to do something about it. And it seems to me by omission, he raised it informally. He must have been satisfied with that aspect of it. And then he doesn't pursue it. That seems to me that's the end of the case for that issue. You want to talk about something else? Well, with regard to his ---- One follow-up question. Your challenge in Federal court is that there has been an indifference to the medical treatment necessary in this case, an Eighth Amendment claim. Yes, Your Honor. Where would I go to find out whether that particular claim was exhausted all the way up to the warden? Your Honor, that claim was dismissed at screening, so the issue of exhaustion did not come before the Court. On remand, presumably defendants would make a motion to dismiss and the issue of exhaustion would come up. At this point, we're limited to Mr. Patterson's verified complaint. And under Wilhelm v. Rotman, that complaint can only be dismissed at screening if it appears beyond all doubt that he can prove no set of facts in support of his claim. At this time, Your Honor, I'd like to reserve the remainder of my time for rebuttal. Thank you. Okay. We'll hear from the warden. Good morning, Your Honors. May it please the Court. My name is Paul Carter. I'm an Assistant Attorney General for the State of Arizona, representing a number of its officials who, in May Patterson's claims, has violated his rights. Just to finish the loop on Officer Young, the reference to his health issue was sort of a side note. I think there's a lot of sarcastic things in his inmate letter. As Your Honors pointed out, he did not follow through on his grievances, focusing instead on his property loss claim. The policy itself indicates that the inmates should limit their grievances to a single issue, and that's what he did, and that's what the Court determined was what he exhausted. So your position is that he might very well have exhausted a property loss claim, but he failed to exhaust his medical indifference claim. That's correct, Your Honor. There are often inmate letters which are really a conditioned precedent to the formal grievance process. They may throw in a number of things that bother them, but then the process, as you alluded to, Your Honor, sort of refines what the issue that really bothers. Well, they're supposed to only raise one issue. What happens if he takes a position that this is both a property loss and also a health danger? Would he file separate grievances, formal grievances? How does he preserve both claims? What occurs in real life, of course, may not be exactly what the process says, but that would be the preferred approach would be to have distinct processes that may be reviewed by different parts of the Corrections Department. As far as the ---- Or could he raise both in one grievance? He could. And in theory, the reviewing officer would then either unprocess it and say you've got to limit yourself to a single issue, or they sometimes would try to deal with both at the same time. I have seen that before. It was not done in this case because he did not raise the Eighth Amendment or the ---- Talk to me about the religious freedom claims. He's got two of them, right? There's the food sharing claim and then there is the eating facilities claim, right? Sure. Thank you, Your Honor. As far as the issues with Officer Riviata, the food sharing, the issue of this being characterized as evangelizing is something he never raised in the court below. And indeed, if you look at ER 84, which is what his counsel is now citing for the proposition that he was evangelizing, I read that. I've read that a number of times, and I don't see that as saying this was, in fact, a religious act. And that's precisely why the district court determined that it did not even implicate his religious freedom. In fact, the district court suggests that the religious practice wasn't even raised, right? That's essentially it, Your Honor. Correct. Because they say the petitioner failed to articulate how his sharing his kosher meal with other inmates furthers a sincerely held religious belief. That is from the district opinion. Correct. So is your argument that he didn't raise it? That is our primary argument, but we can also address the issue on the merits, if you'd like, Your Honor. It raises an interesting issue, because intervening between then and now has been the Shakur decision, which has changed the way we approach religion cases, and now rather than being a sincerely held belief, it simply has to be something that's rooted in religion.   It's a reasonable question. This immediately raises issues of qualified immunity, because a reasonable officer at the time in question could have reasonably determined that even if he was seeking injunctive relief. Correct. So qualified immunity doesn't come into play. There's no qualified immunity against injunction. It's only against damages. That's correct. Well, we're still talking about individual liability, Your Honor. And I know this is beyond the record, but in fact there's only one officer who remains in the Meadows unit where Mr. Patterson finds himself again, and that is Officer Costello, who has already been conceded he didn't exhaust his remedies against. So even if we could conceive of some kind of injunctive relief that might work here, such as allow Mr. Patterson to eat whatever he wants, whenever he wants, and share whatever he wants, whenever he wants, that's also not the sort of thing that a line officer can determine. They can't not enforce content or a neutral policy that, by his own admission, Mr. Patterson has violated. He knows very well he's not supposed to share his, as he calls it, sharing his food. It's still bartering. It's still that kind of exchange of property, which you cannot expect or a reasonable officer cannot be expected to discern whether this particular sharing is a true religious or a purely motivated act or something that's a, something where somebody says, I like your meal better than mine. Give it to me. That creates a completely unworkable scenario for an officer on the line. Indeed, if we look at really when these instances can occur when the sharing is this, it's always his special meal and the regular meal. And this really can only occur during the early turnout that was the issue in the matter when he was turned away. That's really the only occasion when special diners and regular diners eat at the same time. So that's a very limited portion of the whole meal. Was this sharing a pattern or was this a single event? He has been cited by different officers, I believe, at least on four occasions. One of those has come to this Court with Officer Moore. It's come to this Court? Correct. And a discrimination action and her acts were valid or vindicated as being just a reasonable interpretation of prison policy that she enforced in a neutral manner. The case is cited in the papers. I don't have the precise cite at the moment. And, in fact, on appeal, counsel conceded that they are not pressing Officer Moore's issue on appeal. As far as the issue with Officer Riviata, he did have three encounters with Mr. Patterson, and essentially none of them were truly religious issues per se. The matter of a call-out that Mr. Patterson didn't get so he missed a meal, it seems that in that one it was just a matter of not making it to a meal. There's no religious connotation. Now, the second issue, which was over a year later with Officer Riviata, right in front of Mr. Riviata's nose, he's there seeing Mr. Patterson sharing his special diet meal with a regular dieter. And then when he asks him, what are you doing? He says, oh, I'm just, it's the Christian thing to do. Now, Officer Riviata knows very well that this inmate has worked very hard to be accommodated as a Messianic Judas. So when he's confronted by an inmate who has the meal he wants but seems to be sharing it, I would submit to you, Your Honors, that a reasonable officer could very well think that even if the inmate is sincere in his beliefs, that he's using his beliefs in a way to get secondary gain, and that it would be a reasonable response to that to discount the excuse and to simply enforce a very simple everyday policy as framed. The other issue that was raised by counsel relates to the discrimination aspect of the claim, which was dismissed on a motion to dismiss when the district court determined that he had exhausted on his religious exercise but not discrimination. Your Honors, we'll see in the record that Mr. Patterson does use the word discrimination, which is a phrase that's common in his grievances, as you will see. It's a matter of rhetoric without associating these words with an actual person. So in his informal resolution, he says that Sergeant Hunt personally discriminated against him by processing the ticket. Then later in the grievance, right at the top, he says, religious abuse and discrimination, again without attribution to anyone in particular. And then his entire text relates to religious abuse. Finally, when we get to the director's appeal, the final level, he's focused entirely on the abuse issue. The district court's factual determinations are reviewed for clear error, and we would submit that the district court's determination that this was a single claim relating to religious abuse is not clear error. So we're talking about Davis and Wozni? I was still on Riviata. Okay.  But we can do Davis and Wozni, Your Honor. Well, Riviata had many more than one claim, so I wondered why you were really going there with him. Well, we talked about, I thought we were alluding to the argument that there was some sort of a pattern. And Riviata is the only person who had three interactions. My suggestion was the first two were really not religious in nature at all, and it was the third one that arguably might have been. But again, we're really just talking about the sharing of food, an officer coming across an inmate who puts himself right in front of him and commits the violation. Now, it's clear from the record when Mr. Patterson says that he's shared food a thousand times. Mr. Riviata, Officer Riviata has probably seen inmates share food a thousand times. There's no way that they can cite everybody for food sharing. But what Mr. Patterson does is he draws attention to himself by putting himself in these situations. Early chow, he's a special dieter who's sitting among people on a regular diet. There's less inmates there. Of course, he's drawn attention to himself. He will get cited for violating basic prison rules. As to Officers Riviata and Davis, when he presented himself for early chow and for whatever reason he was not. Knocking Wozni and Davis? That's correct, Your Honor. He said Riviata. I'm sorry. When he presented himself on that group, when he presented himself. Thank you, Your Honors. We simply ask that you affirm. Thank you. May it please the Court. My name is Chris Mullitz. I'm also a certified law student representing Mr. Patterson. I'd like to make two brief points on rebuttal, Your Honors. Well, could you respond to opposing counsel's argument that the food sharing claim was not raised in the district court and therefore is not properly before us? The food sharing claim, particularly with regard to the discrimination complaint, was raised, Your Honor. The district court's error. I'm not sure what that means. The food sharing claim, as I understand, is you're not allowed to share food. He claims that this is a burdensome religious right because he's an evangelist and sharing food is a way for him to evangelize. That's how I understand it. Right, Your Honor. And the question is, was this raised below? It was, Your Honor. So in the complaint, he has counts alleging. Where? It's roughly at page 535. I don't know the exact page. Just give me an actual page. I don't know the exact page. The amended. Grab the excerpts. I do. I mean, point me to the language. The end excerpts of the record that I was pointing to, ER 84, just grab the excerpts that you're finding there. I do, Your Honor. So Mr. Patterson at the district court is making. Where? It's a where question. I'd like to turn to page 535, Your Honor. 535. Okay. Excuse me. 535. Okay. That's a request for relief. Right. I see something like $50 million and $5 million in damages. Oh, wow. Right. He's going to be rich. Well, with regard to his relief, Your Honor, at the very last line on page 535, what Mr. Patterson says there is, with regard to the injunctive relief, particularly he's asking for, he's asking them to stop the unnecessary personal and religious abuse. And that's clearly referencing back to the grievances with regard to both the food sharing and the Passover incidences. It's somewhat difficult to flip through the record with the handwritten pro se complaint. But with regard to the discrimination, the food sharing incident that underlies his discrimination claim, the error of the district court is in. So you've talked a lot, but you haven't told me where he raised the complaint. We can't even talk about it if it's not raised in the complaint. If your answer is you don't know where it is. I don't know where it is off the top of my head, Your Honor. But you think it's in there. It is, Your Honor. Go counsel there. It's time to hand you something. It's at count 10, page 531 of the excerpt of the record. 531. Okay. So paragraph 1 there, religious discrimination and abuse. Paragraph what? Paragraph 1, 2, and 3. Okay. There are many lines there. Can you also tell me where you're at? Yes, Your Honor. Paragraph 1. He's alleging religious discrimination and abuse. Count 2. Retaliation and abuse for exercise of religion. In paragraph 3, he goes on to explain that I am on a kosher diet and that the staff believes they can punish Mr. Patterson when they don't believe he is following his religion in their eyes. A few lines up. You don't have to read the irrelevant parts. Why don't you just read the part that matters? Not anything you've said, nothing you've said helps any. What does he say? My religious rights are being, my exercises, free exercises being burdened because I can't share food. That's the essence of his claim, as I understand it. And the question is, what does he raise as a complaint? I don't see it. I didn't find it. Well, Your Honor, I guess looking again at paragraph 3, about halfway through, he says he's being punished when they don't believe he's following his religion in their eyes. He's a pro se litigant. He hasn't had an attorney up to this point. So construing that statement, that they clearly have a different view of what his religion requires of him than he actually believes it requires of him himself. That's a very different claim. That's a claim that he is faking. But this is a very different claim. The claim is, look, one way in which I exercise my religion is to share food. They don't let me share food. That burdens me. I didn't see it in here. I mean, I don't know how. Was this argued in the district court? Was it presented in some other way? Was it an affidavit or anything? I mean, it's not in the district court. It's not here, you know. Maybe you're not prepared to answer this. I apologize, Your Honor, not having the citation off the top of my head. The district court, I guess evidence that it's actually in his pro se complaints is the district court does take it up. So the district court really doesn't. The district court says I don't have to talk about this because he failed to articulate how sharing of his meal with other inmates furthers a sincerely held religious belief or how by being prevented from sharing the meal constitutes a burden on his exercise. That's what the district court said. Right, Your Honor. And with regard to the discrimination complaints precisely, the district court is analyzing the factual specificity that he's alleging in his inmate letters, in the administrative grievance at the prison level. With regard to the free exercise complaint particularly, it is indeed looking at burden, whether or not he's burdened. The proper – with regard to the discrimination complaint and these food-sharing incidences, the district court, of course, found that he's completed or was excused from completing for lack of. When you talk about discrimination complaint, are you talking about the retaliation claim? No, Your Honor. That's a separate account of his complaint. All right. I'm just trying to make sure I'm following what you're arguing. No. And the retaliation complaint, the district court actually dismisses as part and parcel of the discrimination complaint. And the district court's actually – The retaliation complaint was dismissed at screening, right, for failure to exhaust. That's right, Your Honor. And the plaintiff did not respond. And therefore, it was waived. That's not my understanding, Your Honor. The district court doesn't actually discuss it in its dismissal order. What it does do is require that Mr. Patterson adduce a heightened level of factual specificity in his prison grievances. And that's clearly not required under this Court's standard in Griffin v. Arpaio, which says that when a prison's grievance policy is silent or incomplete as to the factual specificity required, it's simply enough to put the prison on notice. And Mr. Patterson, in his inmate letters in the formal grievances and appeals, he's using very specific language in describing the incidences which occurred. He's using legal language like discrimination, which he's not actually required to do. So the only question with regard to the discrimination complaint and the food-sharing incidences at the district court's dismissal order is whether the prison is on notice. And a plain look at the actual administrative grievance letters, they're on notice of what he's complaining of. With regard to the free exercise complaint, on the other hand, the district court to its summary judgment or dismisses because they don't see that he's actually being burdened, and then they go on to explain they're denying to apply the strictures of the Religious Land Use and Institutionalized Persons Act because he doesn't cite to it in his documents, which under Alvarez v. Hill, he's not required to cite to it. But more importantly, on the free exercise claim, the district court is ignoring what's pretty plain evidence in the record that he has, in fact, been burdened. The best place for us to look that he has been burdened is at the disciplinary tickets themselves that he's been given following these incidences. We know that he's losing his privileges for 14 days. He's losing various appliances, the ability to work. He's losing them for violating the rules. I mean, what his claim is, oh, the rules don't apply to me because of these other considerations. But where is that? Where does the ticket disclose that? Well, Your Honor, with regard to the past sort of things. You got a ticket? Where is it? What are you looking at? Where is it in the record? Well, if we go back to page 531, Your Honor, that count 10 once again, he's raising religion. He's saying that. You're jumping around. You're saying look at the tickets. That's not a ticket. That's a complaint. Oh, in the administrative grievances themselves, Your Honor. Well, that's what you're talking about. You said look at the tickets. I'm willing to look at the tickets. I'm asking you where. If we go to page 307, Your Honor, it's a really good example with regard to. Let me just get to page 307, and then we can talk about it. Okay. And then 8. It's. It's an inmate letter from the 21st of March 2007. He's protesting that a particular officer has joined the ranks of the religious persecutors by covering for other officers' lies. He references this letter later. You're pointing me to a letter, but you haven't said what the letter actually says. You haven't pointed out where he talks about the things that help you. So now I'm looking at the piece of paper, and you need to point out the actual words that he uses. I can't, Your Honor. What line should we be looking at here? The second line down, he says that a correctional officer, Sergeant Hunt in this case. The word correctional officer doesn't, is not in the line, second line. He begins, this is a staff grade. Sergeant Hunt has joined the ranks of the religious persecutors and has lied about the policy. Her actions, in order to personally discriminate against me for my religious beliefs. She changed correctional officer Riviata's ticket, which lied and said that I stole food, as correctional officer Costello lied and said that I stole food. Okay. So, again, if you flip to a few pages earlier in the record, there's. You just read that, but I have no idea how that helps you or what, why that is. With regard to the discrimination complaint. What's the point of what you just said? With regard to the discrimination complaint, it shows that the prison is on notice. This is the standard under Griffin. On notice of what? That he's being, that he's alleging that he's suffering abuse and discrimination for his religious beliefs. But it doesn't say anything. All it says is that they lied and they are making things up. It doesn't have anything to do with religion. It doesn't say anything about, you know, it talks about stealing food. Where does this, where does this put the prisoner on notice that says, oh, this is violating my right to religion? Or, you know, where is that? Well, in lines two and three, Your Honor, by alleging that Sergeant Hunt has joined the ranks of religious persecutors, in that we can see, by him saying ranks, that there's more than one religious persecutor. He then goes on to describe the actions of Officers Costello and Riviera. I think it's a fair implication for a pro se prisoner, no attorney, of course, at this administrative point, that they are indeed the religious persecutors to which he's referring. So under the Griffin standard, the prison is on notice that he's... I'm looking at it. I have no idea, even knowing everything I know, what exactly is that he is complaining about here. He says religious persecutors. Is it that they didn't let him share food? Is it that they didn't, they told him to eat in the wrong cafeteria? I mean, is there some other kind? Were they sort of knocking his skullcap off his head or something? I mean, I don't know. I just, reading that, I can't see whether there's a, I mean, what it is that they're doing that, I mean, other than sort of an epithet saying, oh, they're religious persecutors. How does that put anybody on notice of anything? It's enough. Under Griffin v. Arpaio, Your Honor, that... But I don't even get it. I don't even know, looking at it, you say they should have been on notice. I'm not on notice. I can't figure out what it is he's complaining about here. Your Honor, if you look at lines 4 and 5... Yeah? Correctional officer Riviota, she changed correctional officer Riviota's ticket, which lied and said that I stole food, as correctional officer Costello lied and said that I stole food also. What does that have to do, what does that have to do with a religious claim? He, he, he, I gather from this is that they wrote him up for stealing food and he is claiming they lied when they said I stole food. I didn't steal food. But what does that have to do with, where is the religious component here? I would agree with Your Honor that not every element of a legal argument is laid out in this administrative letter. But as the Supreme Court said in... But you agree with me. You're not agreeing with what I actually said. What I said is there's nothing here. So not every, I suppose, is included in nothing, but you're not really agreeing with me. I'm not, Your Honor. I am respectfully disagreeing. I'm saying that under the standard of Griffin v. Arpaio for the purposes of later litigation, it's enough if he's... But this is it, right? No, Your Honor. There are a number of tickets all cited in our brief that... You're way over your time. Thank you. Thank you, Your Honor. Okay. Case is argued. Let's have a minute.
judges: Kozinski, O'scannlain, Smith